# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| AFFIRMATIVE INSURANCE | : | Case No. 15-12136 (CSS) |
| HOLDINGS, INC., et al., | : | (Jointly Administered) |
| | : | |
| Debtors. | : | **Related Docket No. 762** |

## OPINION[1]

| | |
|---|---|
| **ASHBY & GEDDES, P.A.** | **U.S. Department of Justice** |
| Ricardo Palacio | Richard E. Zuckerman |
| Benjamin W. Keenan | Principal Deputy Assistant |
| 500 Delaware Avenue | Attorney General |
| Wilmington, DE 19899 | Ward W. Benson |
| | Trial Attorney, Tax Division |
| Counsel to Don A. Beskrone | P.O. Box 227 |
| Chapter 7 Trustee of the Debtors | Ben Franklin Station |
| | Washington, D.C. 20044 |

Dated: October 15, 2019

Sontchi, C.J._____

## INTRODUCTION

Before the Court is the *Objection of Don. A. Beskrone, Chapter 7 Trustee, to Administrative Expense Claim Filed By the Internal Revenue Service*[2] (the "Objection" filed by

---

[1] The Court hereby makes the following findings of fact and conclusions of law pursuant to Fed. R. Bank. P. 7052, which is applicable to this matter by virtue of Fed. R. Bankr.P. 9014. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions or law constitute findings of fact, they are adopted as such.

[2] D.I. 762 (the "Objection"), D.I. 774 (the "Response"), and D.I. 776 (the "Reply").

the "Trustee").  The Internal Revenue Service ("IRS") is seeking an administrative claim, as identified by the official court registry as claim no. 87-1, for corporate income taxes for the entire 2015 calendar year (the "IRS Claim").  The Trustee asserts that all material taxable events giving rise to such taxes occurred pre-petition; and, by the time the Debtors' cases were commenced, the Debtors were little more than shells with no material operational assets and no meaningful source of revenue.  The Trustee seeks to have the IRS Claim disallowed, or in the alternative, reclassified, in whole or in part, as a general unsecured claim.  The Court heard argument on the Objection on March 13, 2019,[3] and took the matter under advisement.  This is the Court's decision thereon.

## JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).  The Court has the judicial authority to enter final judgements and orders in this matter.  Venue is proper in the Court pursuant to 28 U.S.C. § 1409(a) because this is a proceeding relating to and arising under Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 and the above-captioned chapter 7 case.

## BACKGROUND

### A.    Background of the Bankruptcy Cases

In targeted geographic markets, the Debtors provided non-standard personal automobile insurance ("NSPAI") policies to individual consumers who were unable to

---

[3] *See* Transcript of Hr'g on Mar. 13, 2019 (D.I. 787).  The Transcript will be referred to herein as Tr. Page:line.

obtain insurance from standard automobile insurance companies due to a lack of prior insurance, driving record, financial resources, age, or other factors.

The Debtors' financial struggles arose in significant part from losses incurred from operations over the six years ended December 31, 2014, including an operating loss of $ 31 million for the year ended December 31, 2014.  Losses stemmed from, among other causes, underwriting losses, significant revenue declines, expenses declining less than the amount of revenue declines, and goodwill impairments.  The losses from operations grew out of policies written in 2012 and 2013, prior pricing issues in some states, losses from states the Debtors had exited, including Florida and Michigan, and goodwill impairment charges as a result of such losses.

The Debtors' losses from operations continued during 2015, notwithstanding actions taken to address liquidity and capital issues.   Among other things, on September 30, 2013, Holdco sold its retail agency distribution business to Confie Seguros Holding II Co. and Confie Insurance Group Holdings, Inc. (the "Retail Purchaser").  From that date until June 30, 2015, the Debtors distributed NSPAI policies through an established network of independent agencies, and one unaffiliated underwriting agency writing policies in California.

On June 30, 2015, the Debtors sold their internal underwriting agencies (or managing general agency) ("MGA") operations (the "MGA Sale") to the Retail Purchaser, the same entity that purchased the retail distribution agencies in September 2013.  Upon

closing of the MGA Sale, the Debtors entered into agreements with the Retail Purchaser to provide for the continued distribution and servicing of the Debtors' NSPAI policies.

On October 14, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On October 19, 2015, the Court entered an Order directing the joint administration of the Debtors' cases.[4]

As of the Petition Date, the Debtors had sold or otherwise disposed of substantially all of their material assets, had reduced their employee headcount to twenty-one (from over 1,000 in 2011), and had discontinued virtually all other operations apart from certain limited administrative services provided to their non-debtor, regulated subsidiaries.[5] The provision of these administrative services was the Debtors' sole source of ongoing revenue upon the commencement of their bankruptcy cases.

On December 30, 2015, the Official Committee of Unsecured Committee filed the *Motion for Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 Bankruptcy Code Pursuant to 11 U.S.C. § 1112(b)*.[6] On March 10, 2016, the Court entered an *Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code*.[7] Thereafter, the United States Trustee for the District of Delaware appointed Don A. Beskrone to serve as the Chapter 7 Trustee in these cases. Mr. Beskrone serves as the

---

[4] D.I. 38.

[5] *See* Hrg. Oct 19, 2005 Tr. at pp. 7 and 19 (D.I. 19).

[6] D.I. 191.

[7] D.I. 337.

Trustee to the Debtors and their estates pursuant to section 702(d) of the Bankruptcy Code.

**B. The IRS Claim**

On or about March 29, 2016, the Clerk of the Court issued a Notice of Chapter 7 Bankruptcy Case – Proof of Claim Deadline Set[8] (the "Bar Date Notice").  Pursuant to the Bar Date Notice, (i) the deadline for all creditors (except for governmental units) to file a proof of claim in these cases was set as July 28, 2016, and (ii) the deadline for governmental units to file a proof of claim in these cases was set as September 6, 2016.

On April 18, 2016, the IRS filed an administrative expense claim for income taxes for the tax year ending 2015[9] (the "Original IRS Claim.").  On September 11, 2018, the IRS filed an amended administrative expense claim that amended and superseded the Original IRS Claim[10] (the "IRS Claim").

On or about September 14, 2016, the Trustee filed a federal tax return, on a consolidated basis, for the Debtors.  Pursuant thereto, the Trustee set forth a "total tax" due of $792,113, and an "amount owed" of $806,454.00.

The IRS Claim asserts an administrative expense priority claim against Affirmative Insurance Holdings, Inc. in the amount of $856,704.52 on account of corporate income taxes for the tax period "12/31/2015."   The IRS Claim is comprised of the following

---

[8] D.I. 346.

[9] As identified on the Claims Register, Claim No. 62-1.

[10] As identified on the Claims Register. Claim No. 87-1.

amounts: (i) $792,113.00 (tax due), (ii) $18,566.00 (interest due), and (iii) $46,025.52 (penalty due).

The Trustee asserts that the IRS Claim does not set forth the statutory basis for its alleged classification or priority treatment, nor does the IRS assert or explain whether the IRS Claim is seeking priority treatment for an alleged administrative expense in the Chapter 7 cases.  The Trustee objected to the IRS Claim asserting that the IRS is seeking administrative expense priority for the Debtors' corporate income taxes for the entire 2015 calendar year even though all material taxable events giving rise to use taxes occurred pre-petition.

## DISCUSSION

### A.    Burden of Proof

As the IRS is seeking an administrative expense priority claim, the IRS bears the burden of proof and persuasion.[11]   "When seeking allowance of an administrative expense under § 503(b)(1), the movant bears the burden of establishing that its claim is an actual, necessary expense of preserving the debtor's estate."[12]  If the IRS "fails to meet its burden of proof, the expense is a general unsecured claim."[13]

---

[11] *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 533 (3d Cir. 1999) (a party seeking payment of and administrative expenses carries the "heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." (citation and internal quotation marks omitted).

[12] *In re DBSI, Inc.*, 407 B.R. 159, 165 (Bankr. D. Del. 2009) (citations omitted).

[13] *Id.* (*citing In re Continental Airlines, Inc.*, 146 B.R. 520, 526–27 (Bankr.D.Del.1992)).

**B.**     **Priority of the IRS Claim**

The IRS wants to receive an administrative expense claim for the tax year that straddles the Petition Date (i.e. the tax year begins prior to the Petition Date and concludes after the Petition Date) (the "Straddle Tax Year").  In order to understand the IRS' rights to such administrative claim treatment, a review of the statutory framework for allowing and classifying priority claims is required.

In summary, Section 507(a)(2) gives second priority to "administrative expenses allowed under Section 503(b)[.]"[14]    Section 503(b)(1) provides that administrative expenses shall be allowed for "any tax . . . incurred by the estate, . . . [including fines and penalties,] . . . expect a tax of a kind specified in section 507(a)(8)[.]"[15]

Section 507(a)(8) provides, in relevant part, that allowed unsecured claims of governmental units are entitled to eighth priority treatment to the extent such claims are for "a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition . . . (i) for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition; (ii) assessed within 240 days before the date of the filing of the petition . . .; or (iii) . . . not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case[.]"[16]

---

[14]  11 U.S.C. § 507(a)(2).

[15]  11 U.S.C. § 503(b)(1)(B)(i), (C).

[16]  11 U.S.C. § 507(a)(8)(A).  *See also In Re Earl Gaudio & Son, Inc.*, No. 13-90942, 2017 WL 377918, at *2 (Bankr. C.D. Ill. Jan. 25, 2017).

The Trustee asserts that the IRS Claim is neither an administrative claim nor a priority claim, but a pre-petition unsecured claim because all the events that gave rise to the tax that underlies the IRS Claim arose pre-petition.  The IRS asserts that their claim is an administrative claim because although the tax year straddles the Petition Date, the tax year in which the taxes were incurred concluded and was assessed in the ordinary course post-petition.

As a result of the above, the Court will make a two-part inquiry: (i) whether the IRS Claim is a priority claim under section 507(a)(8); and (ii) if not a priority claim, the Court must determine whether the IRS Claim is an administrative claim; again necessitating a two-part inquiry of (a) when the tax is incurred and (b) by whom.[17]

### i. The Taxes that Underlie the IRS Claim are Not Entitled to Priority Treatment under Section 507(a)(8)

Section 507(a)(8)(A)[18] was amended by the Bankruptcy Abuse Prevention Consumer Protection Act of 2005 ("BAPCPA"), limiting the scope of priority treatment

---

[17] *See Earl Gaudio*, No. 13-90942, 2017 WL 377918 at *3.

[18] Section 507(a)(8) states in relevant part:

> (a)    The following expenses and claims have priority in the following order:
> . . .
> > (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for--
> > (A) a tax on or measured by income or gross receipts **for a taxable year ending on or before the date of the filing of the petition**--
> > > (i) for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;
> > > (ii) assessed within 240 days before the date of the filing of the petition, exclusive of--

to tax claims for taxable years "ending on or before the date of the filing of the petition."[19]
By its plain meaning, the Bankruptcy Code was amended to provide that if a taxable year
ends on or before the Petition Date, such tax shall be afforded a *priority* claim.[20]  "Prior to

---

> (I) any time during which an offer in compromise with respect to that tax was pending or in effect during that 240-day period, plus 30 days; and
>
> (II) any time during which a stay of proceedings against collections was in effect in a prior case under this title during that 240-day period, plus 90 days; or
>
> (iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case; . . .

11 U.S.C. § 507(a)(8).  The Bankruptcy Reform Act of 1994 ("BAPCPA") renumbered this provision from § 507(a)(7) to § 507(a)(8).  Since several of the cases discussed herein use the pre-1994 provision, this analysis will make an effort to distinguish pre-1994 cases from post-1994 cases.

[19] Prior to BAPCPA, § 507(a)(7) (which was later changed in BAPCPA into § 507(a)(8)) read:

> (A)  A tax on or measured by income on gross receipts –
>
> (i)  for a table year ending on or before the date of the filing of the petition for which a return, if required is last due, including extensions, after three years before the date of the filing of the petition;
>
> (ii)  assessed within 240 days, plus any time plus 30 days during which an order in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or
>
> (iii)  other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case[.]

11 U.S.C. § 507(a)(7) (pre-1994).

[20] *In re FR & S Corp.*, No. 08-08659 ESL, 2011 WL 1261329, at *5 (Bankr. D.P.R. Mar. 30, 2011) ("The 2005 BAPCPA amendments to Section 507(a)(8)(A) provide that income taxes for the straddle year are entirely post-petition administrative expenses.").  *See* 11 Collier on Bankruptcy ¶ TX 1.05[5][a] (Richard Levin & Henry J. Sommer eds. 16th ed.) ("Several U.S. Court of Appeals panels have held that the income tax liability of a corporate debtor for the year of bankruptcy filing (the 'straddle year') must be bifurcated into a pre-petition component and an administrative expense component, notwithstanding that the filing of the petition does not terminate the corporate debtor's taxable year.  BAPCPA amend[ed] section 507(a)(8) governing the priority of taxes to provide that income and gross receipt taxes for straddle years are post-petition administrative expense claims that must be paid in full in the ordinary course, rather than pre-

BAPCPA, the former § 507(a)(7) created a catch-all provision by giving seventh priority treatment not only to tax claims for taxable years that ended on or before filing, but also to any tax that was assessable after the commencement of the case—without regard to the taxable year."[21]   Critically, here, the Court is looking at a taxable year that **straddles** the Petition Date (i.e. the tax year covered by the IRS Claim does not **end** on or before the Petition Date).[22]   As a result, the IRS Claim does not qualify for priority treatment under § 507(a)(8).

### ii.    The IRS Claim is Not Entitled to Administrative Expenses Status in Full Under Section 503(b)(1); and Should be Bifurcated Into Pre- and Post-Petition Periods.

The Court must then look to whether the tax debt was "incurred by the estate."

Section 503 states, in relevant part:

> (a) an entity may timely file a request for payment of an administrative expense, or may tardily file such a request if permitted by the court for cause.

> (b) After notice and a hearing, there shall be allowed administrative expenses, ... including—

> (1) (A) the actual, necessary costs and expenses of preserving the estate . . . .

> (1)(B) any tax –

> (i) Incurred by the estate, whether secured or unsecured including property taxes for which liability is in rem, in personam, or both, except a tax of a kind specified in section 507(a)(8) of this title; or

> (ii) Attributable to an excessive allowance of a tentative carryback adjustment that the estate received,

---

petition priority claims that are not payable until emergence (and may at that point be subject to the deferred payment rules of Section 1129(a)(9)(C)).").

[21] *Earl Gaudio*, No. 13-90942, 2017 WL 377918 at *2.

[22] 11 U.S.C. § 507(a)(8).

> whether the taxable year to which such adjustment relates
> ended before or after the commencement of the case; . . . . [23]

"[T]he elimination of eighth priority does not mandate administrative expense treatment. Even if the claim is deemed to arise post-petition—a question that was and will continue to be debatable—the courts will have to conclude that the tax liability was 'incurred by the estate' in order to grant administrative expense priority."[24] Thus, pursuant to Section 503(b)(1)(B)(i), it must be determined whether the taxes were "incurred" by the estate, i.e., post-petition, within the meaning of Section 503(b)(1)(B)(i).[25] Here, the Trustee asserts that the taxes that underlie the IRS Claim were *not* incurred by the Debtors' estates (either in the Chapter 7 cases, or in the Chapter 11 cases).

The Bankruptcy Code does not define "incurred by the estate." "However, most courts considering the issue have found that a tax is incurred when it accrues and becomes a fixed liability."[26] State law determines the date that a tax is incurred.[27]

Although pre-BAPCPA, the Third Circuit in *In re Columbia Gas Transmission Corp.* held that a tax liability is generally "incurred" on the date it accrues and not on the date

---

[23] 11 U.S.C. § 503(a) and (b).

[24] Prof. Gregory L. Germain, *Taxing Income in the Year of Bankruptcy Under BAPCPA*, Am. Bankr. Inst. J., December/January 2006, at 14, 57–58.

[25] *O'Brien*, 181 F.3d at 532–33 (*quoting Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976)) ("For a claim in its entirety to be entitled to first priority under [§ 503(b)(1)(A)], the debt must arise from a transaction with the debtor-in-possession . . . . [and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of the business.").

[26] *In re Barnhill's Buffet, Inc.*, No. 07-08948, 2010 WL 703088, at *1 (Bankr. M.D. Tenn. Feb. 24, 2010) (*citing In re Columbia Gas Transmission Corp.*, 37 F.3d 982, 985–86 (3d Cir. 1994); *In re Federated Department Stores, Inc.*, 270 F.3d 994, 1000–1001 (6th Cir. 2001)).

[27] *Earl Gaudio*, No. 13-90942, 2017 WL 377918 at *3 (citations omitted).

of the assessment or the date on which it is payable.[28]  The Third Circuit looked to *In re*

*Connecticut Motor Lines, Inc.* for guidance:

> *Connecticut Motor Lines*, a case decided under the Bankruptcy Act of 1898, § 64a, 11 U.S.C. § 104(a)(1) (1976 ed.), this Court found that taxes arising from wages relating to services rendered prior to the bankruptcy, but paid during the bankruptcy, were not entitled to priority as an administrative expense.  This Court reasoned, among other things, that
>
>> the employer, in a case in which he was not involved in a bankruptcy proceeding, would have had to pay the wages as employer, under the Internal Revenue Code, even if he were no longer, in actuality, employer.  And he would, at the time of payment, have had to pay the accrued taxes, despite his no longer being employer.[29]

Interestingly, prior to BAPCPA there was a split of authority about whether to bifurcate

a Straddle Tax Year; although the Third Circuit held that such Straddle Tax Years must

be bifurcated into (at the time) priority and unsecured claims.[30]  In *In re Hillsborough*

*Holdings Corp.*,[31] the bankruptcy court considered whether taxes generated from pre-

petition income could be claimed as an administrative expense of the estate as the

associated tax return was filed post-petition.  The *Hillsborough Holdings* court held:

> a majority of courts have held that the date the taxes are accrued, rather than the date of assessment, is the date which controls.  The mere fact that assessment of a tax does not occur until after the Bankruptcy petition is filed does not result in a

---

[28] *Columbia Gas Transmission Corp.*, 37 F.3d at 985 (*quoting In re Bondi's Valu-King, Inc.*, 102 B.R. 108, 110 (Bankr. N.D. Ohio 1989) (citation omitted), *aff'd on other grounds*, 126 B.R. 47 (N.D.Ohio 1991)).

[29] *Id.* at 986 (*quoting In re Connecticut Motor Lines, Inc.*, 336 F.2d 96, 106 (3d Cir.1964)).

[30] *Id.*

[31] 156 B.R. 318, 320 (Bankr. M.D. Fla. 1993) *subsequently aff'd*, 116 F.3d 1391 (11th Cir. 1997) (citations omitted).

> tax relating to pre-petition activities being allowed as an administrative expense. To the extent that income was not earned by the estate during part of the tax year, but instead earned by the pre-petition debtor, the tax was not incurred by the estate and was not entitled to administrative expense.
>
> The claim sought by the IRS to be allowed as an administrative expense relates to income received [before] ... the date the Chapter 11 case was filed by these Debtors, this income is clearly attributable to pre-petition activities. To charge the estate with these taxes as cost administration is a proposition which this Court is unwilling to accept. Therefore, this Court is satisfied that the taxes incurred prepetition by the Debtor are not properly allowable as costs of administration pursuant to § 503.[32]

In *Matter of O.P.M. Leasing Services, Inc.*, the bankruptcy court was faced with the exact issue, albeit prior to BAPCPA, wherein the filed proof of claim for the pre-petition portion of a corporate income tax could not be precisely determined until the end of the debtor's fiscal year, terminating post-petition.[33] The Court held: "[n]onetheless, as the claim at issue consists of taxes allocable to business activities during the pre-petition period, that claim is not entitled to an administrative expense priority."[34] The Court explained that the legislative history of then § 503(b)(1)(B) limited the administrative expense to "income earned by the estate during the case."[35] The *O.P.M. Leasing* continued that to the extent "income is not earned by the estate during the case, but is instead earned by the pre-

---

[32] *Id.* at 320 (citations omitted). *See In re Goody's LLC*, 508 B.R. 891, 899 (Bankr. D. Del. 2014).

[33] *Matter of O.P.M. Leasing Servs., Inc.*, 68 B.R. 979, 983 (Bankr. S.D.N.Y. 1987).

[34] *Id.* at 983–84.

[35] *Id.* at 984 (*quoting* S.Rep. No. 989, 95th Cong., 2d Sess. 66 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5852).

petition debtor, any tax liability on that income is not entitled to an administrative expense priority."[36]

Furthermore, the Supreme Court has held that when Congress "amends the bankruptcy laws, it does not write 'on a clean slate.'"[37]  The Supreme Court has held:

> this Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history.  Of course, where the language is unambiguous, silence in the legislative history cannot be controlling.  But, given the ambiguity here, to attribute to Congress the intention to grant a debtor the broad new remedy . . . [38]

The Third Circuit has held that absent "clear congressional intent," we should not read the Bankruptcy Code provision to effect a major change in pre-Code practice.[39] "Incorporation by Congress of the former disallowance provision into the Code is significant and, unless it can be inferred that Congress intended clearly to change a provision of the existing law (such as through an explicit change in the language of the statute or a statement in legislative history), prior case law interpreting the provision is

---

[36] *O.P.M. Leasing Servs., Inc.*, 68 B.R. at 984.

[37] *Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S. Ct. 773, 779, 116 L. Ed. 2d 903 (1992) (courts generally reluctant to assume Congress intended to effect major change in Pre-Code practice in absence of clear indication to contrary) (*citing United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 380, 108 S.Ct. 626, 634, 98 L.Ed.2d 740 (1988); *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 563, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 244–245, 109 S.Ct. 1026, 1032–1033, 103 L.Ed.2d 290 (1989)).

[38] *Id.*

[39] *In re VistaCare Grp., LLC*, 678 F.3d 218, 230 (3d Cir. 2012) (citation omitted).

still valid law."[40]  "'[A] court's primary objective is to ascertain the intent of the legislature by looking at the language of the statute itself and giving it its plain, ordinary and commonly understood meaning.'"[41]

> Where a statute's language is clear, the Court's obligation is to apply it according to its terms, unless such a literal application would produce an absurd result or one demonstrably at odds with the intent of the drafters.  An interpretation is absurd if "it is so gross as to shock the general moral or common sense."  The fact that the statute might result in a harsh result when subjected to a plain meaning interpretation does not necessarily mean that it is absurd.[42]

The IRS argues that "[w]hen Congress amends legislation, courts must presume it intends the change to have real and substantial effect."[43]  However, this canon of interpretation is inconsistent with the concept of not effecting a major change to pre-Code practice without explicit language.  Here, BAPCPA had a real and substantial effect of creating a priority claim for tax years that ended on or before the petition date.  In no way would this Court's refusal to accept that the pre-petition portion of the Straddle Tax as an administrative claim, create an ambiguity with Congress' intention in BAPCPA regarding priority claims for tax years ending on or before the petition date.

---

[40] *In re KB Toys, Inc.*, 470 B.R. 331, 337 (Bankr. D. Del. 2012) (citation omitted), *aff'd sub nom. In re KB Toys Inc.*, 736 F.3d 247 (3d Cir. 2013).

[41] *In re Roach*, No. 08-20667, 2008 WL 5397570, at *3 (Bankr. W.D. Mo. Dec. 23, 2008) (quoting *In re M&S Grading, Inc.*, 457 F.3d 989, 901 (8th Cir. 2006) (further citations omitted)).

[42] *In re Roach*, No. 08-20667, 2008 WL 5397570 at *3 (citations omitted) (holding that the "interplay of the[] two sections, by their plain language does not allow for an administrative expense claim.  This does not necessarily produce an absurd result as the legislature may have had the intent to promote the policy of not burdening a debtor that chooses not to liquidate with priority claims that would take away from other creditors in the new Chapter 13 plan.").

[43] *Ross v. Blake*, 136 S. Ct. 1850, 1858, 195 L. Ed. 2d 117 (2016) (internal modifications, quotations marks and citations omitted).

As this matter hinges on the statutory language, interestingly there is a distinction between section 503(b)(1)(B)(i) and (ii).  Section 503(b)(1)(B)(i) states "any tax . . . incurred by the estate."[44]  However, section 503(B)(1)(B)(ii) expressly gives administrative expense priority to "any tax . . . . attributable to an excessive allowance of a tentative carry back adjustment that the estate received, *whether the taxable year to which such adjustment relates ended before or after the commencement of the case."*[45]    Although not directly relevant substantively, it does indicate Congresses ability to be specific and to show intention.  In other words, if Congresses desired to grant administrative expense priority to *all* straddle year taxes, it could have done so by using the language similar to that set forth in section 503(b)(1)(B)(ii).[46]

Two cases decided after BAPCPA have found that the "intended effect" was to clarify that Straddle Tax Year liabilities are to be treated as post-petition claims. However, based on the plain meaning of §503(b)(1)(B) and the cannons of statutory interpretation, this Court disagrees as discussed *infra*.

In *In re Earl Gaurdio & Sons, Inc.*, the Central District of Illinois Bankruptcy Court was faced with business income and liquor tax claim for the Straddle Tax Year.  The *Earl Gaurdio* court held that the Straddle Tax Year was not a priority claim pursuant to section 507(a)(8) due to the amendments in BAPCPA (which this Court agrees with in

---

[44]  11 U.S.C. § 503(b)(1)(B)(i).

[45]  11 U.S.C. § 503(b)(1)(B)(ii) (emphasis added).

[46]  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n. 9, 124 S. Ct. 2739, 2754 n. 9, 159 L. Ed. 2d 718 (2004) (quoting 2A N. Singer, Statutes and Statutory Construction § 46:06, p. 194 (6th rev.ed. 2000) (finding that the "usual rule that 'when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.'").

this case as discussed *supra*).  The *Earl Gaudio* court then examined whether the taxes at

issue were "incurred by the estate."  The court held that income tax in Illinois is assessed

on the date of the filing of the tax return and the than Illinois Income Tax Act provides

that business income tax is incurred "no earlier than the end of the taxable year, when

liability is accrued and fixes or inescapably imposed."[47]  The *Earl Gaudio* court stated that

a "taxable event" was different than a "tax liability" – taxable events occur during the

period whereas tax liability is not fixed until the end of the tax year. The *Earl Gaudio* court

held:

> The Debtor seems to conflate the concept of "taxable event"
> with "tax liability."  Most taxpayers have numerous taxable
> events occur during the course of any tax period.  Every
> receipt of potentially taxable income, whether from wages,
> interest, dividends, rent, or asset sales, may be a taxable event.
> But a taxpayer's liability to pay a particular amount of taxes
> is generally calculated only at the end of a tax period, when
> all taxable events occurring during the period and when all
> deductions and credits that may be available to offset
> otherwise payable taxes are known.  The occurrence of a
> taxable event is only one factor in calculating an entity's tax
> liability for a particular tax period and the date of such event
> is not the date when tax liability is fixed or inescapably
> imposed.[48]

I disagree.  The Court is not determining the **amount** of taxes due (or as the *In re Earl*

*Gaudio & Son, Inc.* court refers to the "taxpayer liability") – it is examining the **priority**

based on whether the tax was incurred, administrative priority or general unsecured as

the case may be.  As the Eighth Circuit Court stated in *In re L.J. O'Neill Shoe Co.*, "[s]imply

---

[47]  *Earl Gaudio*, No. 13-90942, 2017 WL 377918 at *3.

[48]  *Id.* at *4.

stated, the tax is being imposed against the single corporate entity in keeping with [the

Bankruptcy Code] . . ., but the payment of the tax imposed is being divided into separate

components in accordance with the bankruptcy laws determining the priority of payment

of those claims.    Thus, there is nothing in either the bankruptcy or tax laws which

prevents us from allowing different treatment during distribution for different portions

of . . . . claims in this case."[49]

　　Similarly in *In re FR & S Corp.*,[50]  against faced with a Straddle Tax Year, the court

held: "the Debtor filed for bankruptcy prior to the close of its calendar year, thus the tax

for taxable year 2008 accrued subsequent to the filing of the bankruptcy petition meaning

that the first prong of the test is satisfied and the income tax liability for the year 2008 was

'incurred by the estate.' Therefore, the court concludes that the PR Treasury's right to

payment or claim arises in the case of a corporate debtor, on the last day of its taxable

year, that is, December 31, 2008."[51]    The *FR & S* court noted that pre-BAPCPA

jurisprudence allowed bifurcation of a tax year.  The court continued that

> The 2005 BAPCPA amendments to Section 507(a)(8)(A)
> provide that income taxes for the straddle year are entirely
> post-petition administrative expenses.[52]

---

[49]  *In re L.J. O'Neill Shoe Co.*, 64 F.3d 1146, 1152 (8th Cir. 1995).

[50]  *FR & S Corp.*, No. 08-08659 ESL, 2011 WL 1261329.

[51]  *Id.* at *4 (footnote omitted).

[52]  *Id.* at *5.  Interestingly, and without citation, Collier on Bankruptcy provides:

> Several U.S. Bankruptcy Court panels have held that the income tax
> liability of a corporate debtor for the year of bankruptcy filing (the
> "straddle year") must be bifurcated into a pre-petition component and an
> administrative expense component, notwithstanding that the filing of the
> petition does not terminate the corporate debtor's taxable year. BAPCPA
> amend [ed] section 507(a)(8) governing the priority of taxes to provide that

Again, I disagree.  The Court could not find any legislative history or statutory language allowing for the Straddle Tax Year to be an administrative claim.  In fact, although Congress could have expressly written such, it did not.

In *Marion County Treasurer v. Blue Lustre Products, Inc.*,[53] albeit before BAPCPA, the District Court for the Southern District of Indiana examined the date on which a tax was "incurred."  The *Blue Lustre* court stated: "[w]hile the assessment date and the date the tax is incurred are not necessarily the same date, Indiana law indicates that these dates are the same, in that Ind.Code § 6–1.1–2–4 imposes the annual tax liability on the person who is the owner of the property on the assessment date.  Therefore, while the owner is not required to file a personal property tax return until May 15 of the same year, and is not required to pay the taxes until May 10 and November 10 of the following year, the liability of the owner is fixed as of March 1 [the date the Indiana assessment].  In fact, it appears that the owner's liability would not be affected even if the property were sold after this date."[54]  The *Blue Lustre* court reasoned that "[b]ecause the estate does not exist until after the bankruptcy petition is filed, taxes incurred by the debtor prior to the filing

---

income and gross receipt taxes for Straddle Years are post-petition administrative expense claims that must be paid in full in the ordinary course, rather than pre-petition priority claims that are not payable until emergence (and may at that point be subject to the deferred payment rules of Section 1129(a)(9)(C)).

11 Collier on Bankruptcy ¶ TX 1.05[5][a] (Richard Levin & Henry J. Sommer eds., 16th ed.).  Although normally persuasive, the Court respectfully disagrees with Collier's analysis of the BAPCPA amendments to § 507(a)(8).  The Court can find no evidence of legislative will or history to indicate Congressional intent.

[53]  214 B.R. 188 (S.D. Ind. 1997).

[54]  *Id.* at 190 (internal citations omitted).

of the petition are not taxes incurred by the estate."[55]  The court continued that it is the date the taxes are incurred rather than on the date that the taxes are *due* that determines whether taxes qualify as administrative expenses.[56]

Commentators have stated that "[t]he amendment to Section 507(a)(8) contained in the BAPCPA is clearly intended to follow the government's position on this issue and to overrule the bifurcation cases, although the technical draftsmanship of the amendment may have left something to be desired."[57]  It is argued that by "failing to amend § 503(b)(1)(B) to make clear that pre-petition Straddle Year taxes are 'incurred by the estate' leaves open the bizarre and unintended possibility that such taxes are neither pre-petition priority claims nor administrative period claims."[58]

On the other hand, "[t]reating the entire straddle year as a post-petition tax period is also much simpler administratively.  Debtors do not need to allocate their income and deductions between the pre-and post-petition tax portion of the filing year, or defend the decision to bifurcate when challenged on audit." [59]

---

[55]  *Id.* (internal citation omitted).

[56]  *Id.*

[57]  Carl M. Jenks, *The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005: Summary of Tax Provisions*, 49 Am.Bankr.L.J. 893, 898 (2005).

[58]  Carl M. Jenks, *The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005: Summary of Tax Provisions*, 79 Am. Bankr. L.J. 893, 913 n. 34 (2005) (citing Carl M. Jenks, Candace A. Ridgway & Edward A. Purnell, 790 T.M., Corporate Bankruptcy A-38 to A-39 (2004)).

[59]  Carl. M. Jenks, *Summary of Tax Provisions*, SL068 ALI-ABA 121, 126 (Am. Law Inst. – Am. Bar Assn. Cont. Legal Educ. 2005).

The IRS points to *Hall v. United States*,[60] which the IRS acknowledges is distinguishable on its facts. *Hall* involved a Chapter 12 case where the individual farmer debtors ultimately were held to be responsible for certain tax liabilities, rather than the bankruptcy estate, as no separate taxable entity was created through the commencement of the bankruptcy cases.[61] The *Hall* court reasons that the interplay between the bankruptcy code and tax law "reinforces the reasonableness of our view that whether an estate 'incurs' taxes under § 503(b) turns on such chapter-by-chapter distinctions . . . " in the bankruptcy code.[62] The Supreme Court distinguished the case before them, a Chapter 12 debtor, from caselaw concerning corporate debtors.[63]

*Hall* is readily distinguishable from the issue presented here; and is limited by the very language of the opinion; including two instances expressly noting that corporate debtors were treated differently and that the holding was limited to Chapter 12 cases as the bankruptcy code is applied on a chapter-by-chapter basis.

"Administrative expense priority should only be given to obligations that resulted in or arose out of a benefit received after the bankruptcy estate came into being . . . [,]"[64] unless Congress gives specific instructions otherwise. The Court appreciates that this

---

[60] 566 U.S. 506, 132 S. Ct. 1882, 182 L. Ed. 2d 840 (2012).

[61] *Id.* at 512–13 ("The postpetition federal income tax liability is not "incurred by the estate" and thus is neither collectible nor dischargeable in the Chapter 12 plan.").

[62] *Id.* at 513.

[63] *Id.* at 521 ("But those cases involve corporate debtors and are therefore inapposite. Among estates that are not separately taxable, those involving corporate debtors have long been singled out by Congress for special responsibilities." (citations and footnote omitted)).

[64] Gregory L. Germain, *Taxing Income in the Year of the Bankruptcy Under BAPCPA*, 24-Jan Am. Bankr. Inst. J. 14, 58 (2005).

result may cause an administrative burden on the debtors and the IRS to properly parse out pre- and post- petition events; however, the Court cannot read language into the Code or "guess" Congressional intent.  The plain-meaning of the statute indicates that although the amount or liability may be decided at the conclusion of the tax year; the administrative priority of that liability must turn on whether the estate "incurred" the claim.  As such, the Court holds that pre-petition events that incur tax liability during "Straddle Tax Years" are afforded general unsecured status whereas, post-petition events that incur tax liability during those same "Straddle Tax Years" are afforded administrative priority – in effect, bifurcating the straddle tax years into two distinct treatments under the Bankruptcy Code.

## <u>CONCLUSION</u>

For the reasons discussed above, the Court will sustain the Objection and reclassify the IRS Claim, Claim No. 87-1, as a general unsecured claim, provided, however, that the Court will allow the government 90 days to file an amended claim specifying the tax liability, if any, that is allocable to the period after the Petition Date.  An Order will be issued.